STATE OF NEW JERSEY IN THE INTEREST OF
M. H. A JUVENILE.

Superior Court of New Jersey
Appellate Division

Submitted November 19, 1974—Decided December 12, 1974.

Before Judges MATTHEWS, FRITZ and BOTTER.

*Mr. Stanley C. Van Ness,* Public Defender, attorney for juvenile appellant (*Mr. Thomas A. Pavics,* Assistant Deputy Public Defender, of counsel and on the brief).

*Mr. William F. Hyland,* Attorney General of New Jersey, attorney for respondent State of New Jersey (*Mr. Jeffrey J. Lee,* Special Deputy Attorney General, of counsel and on the brief).

PER CURIAM. In this appeal M. H., a juvenile, contends that the trial court mistakenly imposed a suspended sentence to "Yardville" and probation as a means of compelling M. H. to enter Highfields, although the court could have sentenced him directly to Highfields under *N. J. S. A.* 2A:4–37 without a suspended custodial sentence. (*N. J. S. A.* 2A:4–37 was repealed by *L.* 1973, *c.* 306, § 27, as part of the law commonly referred to as the J. I. N. S. (Juveniles in Need of Supervision) law, *N. J. S. A.* 2A:4–42 *et seq.* Its provisions are now found in *N. J. S. A.* 2A:4–61; but see *N. J. S. A.* 2A:4–62.) Appellant asks this court to vacate the "underlying suspended sentence" or to remand for resentencing.

In October 1973 M. H., a 16-year-old juvenile, pleaded guilty to an adjudication of delinquency for the separate acts of being under the influence of alcoholic beverages and hitchhiking. This was part of a plea bargain involving an amendment of two complaints so as to eliminate other charges. In December 1973 M. H. pleaded guilty to a violation of probation for failing to report regularly to his probation officer. On the same date he was adjudicated delin-

quent for consuming alcoholic beverages and obstructing a police officer in the performance of his duties. M. H. was sentenced to a term at the Youth Correctional Institution Complex at Yardville, which sentence was suspended, and probation was imposed conditioned upon his entering and successfully participating in the Highfields residential group center. See *N. J. S. A.* 30:4-177.32, which authorizes the establishment of facilities for receiving and treating juvenile delinquent probationers, who must "voluntarily submit" to treatment and supervision therein for a period not to exceed four months.

M. H. has a history of offenses beginning at age 13 when he was first placed on probation. The presentence report shows that he has the potential to lead a constructive life, but his behavior reflects problems at home, affected to a large measure by his father's alcoholism. The judge below made it clear that, in effect, he was imposing a sentence to Yardville in the event M. H. fails to satisfactorily participate in and complete the Highfields program. Thus, the court said: "You're either to be in Yardville or Highfield [sic], no other place." At this point counsel for M. H. urged the judge not to impose a suspended Yardville sentence because he feared that M. H. might be charged with a minor probation violation while at Highfields which would activate the Yardville sentence. He contended that M. H. was a proper candidate for Highfields but not for Yardville.

The trial judge responded that a person "cannot be sent to Highfields unless he's on a suspended sentence to Yardville." The probation officer on the case concurred in this understanding.

*N. J. S. A.* 30:4-177.31 expresses the public policy favoring treatment of juvenile delinquents by various means, "without institutional confinement under court commitment procedures." See *N. J. S. A.* 2A:4-61 and *N. J. S. A.* 2A:4-62 of the J. I. N. S. law. The succeeding sections authorize the establishment of group treatment centers such as High-

fields "as alternatives to the correctional institutions." *Disposition Manual For Juvenile Judges,* 48 (1972).

The procedure followed by the trial judge here conforms to the recommendation contained in the *Disposition Manual For Juvenile Judges, supra.* This manual, which is distributed to judges by the Administrative Office of the Courts, states:

A judge wishing to refer a boy to one of the group centers imposes a suspended sentence to the Youth Reception and Correctional Center at Yardville and then places him on probation with one condition being successful completion of the program. This method of sentencing impresses on the boy the fact that the residential group center is the last chance he has to avoid commitment to the institution, and accounts in some measure for the high degree of cooperation which the program elicits from participants. [at 51]

Without imposing and suspending a custodial sentence to Yardville, a judge can place an adjudicated delinquent on probation upon such conditions, such as residential treatment, as will aid in the rehabilitation of the juvenile. *N. J. S. A.* 2A:4–61(c), formerly *N. J. S. A.* 2A:4–37(a). While the trial judge here mistakenly believed that the only way M. H. could be sent to Highfields was by first imposing a suspended Yardville sentence, the record suggests that the judge felt that a suspended custodial sentence was appropriate in this case, in any event.

In order to facilitate disposition of this matter, we will not vacate the underlying suspended sentence, since the boy's history persuades us that such disposition as was made here was a proper exercise of the discretion of the trial judge. Appellant has the right, under *R.* 3:21–10, to apply for a change in sentence following the decision of this court, so that the trial judge may reconsider his disposition in the light of this opinion. *R.* 3:21–10, made applicable to the Juvenile and Domestic Relations Court by *R.* 5:6–1(a) and (c). The trial judge can also invoke the provisions of *R.* 3:21–10 and change the sentence on his own initiative if he desires. We imply

no suggestion as to whether the sentence should be changed. This is a matter for the discretion of the trial judge.

Affirmed.